**GIBBS LAW GROUP LLP**
Eric H. Gibbs (SBN 178658)
Michael L. Schrag (SBN 185832)
Geoffrey A. Munroe (SBN 228590)
Aaron Blumenthal (SBN 310605)
505 14th Street, Ste. 1110
Oakland, CA  94612
Telephone:  510-350-9700
Facsimile:  510-350-9701
*ehg@classlawgroup.com*
*mls@classlawgroup.com*
*gam@classlawgroup.com*
*ab@classlawgroup.com*

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Daniel Ogles Jr., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank, N.A.<br><br>Defendant. | Case No. 17-cv-06593<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

## INTRODUCTION

1. Refinancing when interest rates are low is a foundation of the American economy. Mortgage lenders, however, don't want borrowers to refinance with a different lender. When borrowers go to a new lender, the previous lender loses a substantial amount of expected interest. To deter refinancing, lenders began building early-termination fees into their mortgages to penalize borrowers who prepaid or refinanced.

2. The federal government acted to stop such penalties in many federal housing programs, and for all mortgages, at least to ensure that prepayment penalties were adequately disclosed and borrowers were adequately warned about how they could avoid prepayment penalties.

3. To circumvent these rules, lenders such as Chase began disguising prepayment penalties as other charges. For example, Chase charged "interest" on its loans for a period after the borrower had already repaid in full.

4. In 2013, the Consumer Financial Protection Bureau officially declared that post-payment interest charges were disguised prepayment penalties. But Chase has not stopped charging post-payment interest. Plaintiff Daniel Ogles refinanced his Chase mortgage in 2015 with another lender, yet Chase charged him nearly $2,000 in interest for a period *after* he had already fully repaid his loan. These post-payment interest charges were not lawfully assessed per the terms of Chase's mortgage contract, and violated federal mortgage regulations and state consumer protection laws. To remedy these violations, Mr. Ogles brings this suit on behalf of himself and similarly situated individuals.

## PARTIES

5. Plaintiff Daniel Ogles Jr., a natural person, is a resident and citizen of California.

6. Defendant JPMorgan Chase Bank, N.A. is a Delaware corporation with its principal place of business in New York.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from at least one

defendant, there are 100 or more Class members, and the aggregate amount in controversy is greater than $5 million.

8. This Court has personal jurisdiction over Defendant because the claims for relief relate to Defendant's acts and omissions directed to and occurring within California.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims arose in this District.

## INTRADISTRICT ASSIGNMENT

10. Assignment to the San Francisco or Oakland Division is proper pursuant to Civil Local Rule 3-2(d) because a substantial part of the acts or omissions giving rise to the claims occurred in Contra Costa County, where Plaintiff Ogles's mortgage property is located.

## FACTUAL ALLEGATIONS

### I. Background on Prepayment Penalties

11. Credit comes in two varieties: closed and open ended. Closed ended credit is for a set period, after which the loan must be paid in full. An example of closed ended credit is a 20-year mortgage, which must be paid off within 20 years. In contrast, open ended credit has no durational limits, but may have spending limits. A credit card, for example, is an open ended line of credit.

12. Because open ended credit has no set duration, the full debt can be paid off at any time. Today, in the United States, the same is true for most close ended credit.

13. At common law, however, borrowers could *not* prepay. Early English common law mandated that borrowers keep closed ended loans for their full duration, paying interest all along the way.[1] Nineteenth century American courts followed their English brethren.[2]

14. Over time, however, the law softened. "[T]he triumph of common sense … has never been more strikingly illustrated than in the gradual manner in which Courts of Equity have been enabled to withdraw mortgages from the stern and unrelenting character of conditions at the

---

[1] Robert K. Baldwin, *Prepayment Penalties: A Survey and Suggestion*, 40 VAND. L. REV. 409, 411 (1987).

[2] Frank S. Alexander, *Mortage Prepayment The Trial of Common Sense*, 72 CORNELL L. REV. 288, 341 (1987).

Common Law," writes Justice Joseph Story of the U.S. Supreme Court.[3] Twentieth century courts and legislatures incrementally recognized a "right of prepayment,"[4] which prevails today in most close ended mortgages.

15. Banks aren't happy when borrowers prepay. Over the life of a loan, the bank earns a substantial amount of interest. A 30-year mortgage of $300,000, on average, will generate about $222,000 in interest for the bank.[5] If the borrower refinances the loan with a different lender, the bank loses all that expected income.

16. To deter borrowers from refinancing, banks introduced prepayment penalties. As part of the mortgage contract, banks would assess borrowers a penalty fee if they paid off their debt early. A common provision required the borrower pay the equivalent of five months' interest, in advance, to prepay the loan.[6]

17. Prepayment is a necessary part of the procedure for refinancing with a new lender. The borrower takes out a new mortgage and uses the mortgage proceeds to pay off the old lender. This early payoff becomes substantially more expensive when the older lender charges a prepayment penalty.

18. The federal government continues to address prepayment penalties. For example, the federal government requires that mortgage contracts offered through the Federal Housing Administration's loan program contain a right to prepay the mortgage, without penalty.

## II. Background on the Federal Housing Administration's Loan Program

19. During the Great Depression, Congress created a federal agency, the Federal Housing Administration, to facilitate growth in homeownership rates. The Federal Housing Administration (FHA) accomplishes this goal by expanding Americans' access to mortgage credit on favorable terms, because many Americans are "unable to meet the 20 percent down payment

---

[3] *Id*. at 288.

[4] *Id*. at 341.

[5] *See* Jonathan Wathen, *Here's the Size of the Average American's Mortgage*, THE MOTLEY FOOL (Feb. 25, 2017), https://goo.gl/annyqS (the average interest rate on mortgages in 2017 was 4.1 percent).

[6] TheTruthAboutMortgage, *Prepayment Penalty*, https://goo.gl/S48Brd. *See also* WikiHow, *How to Calculate a Prepayment Penalty*, https://goo.gl/qA7mSe ("a common penalty is 80 percent of six months' interest," equal to about five months' interest).

and other requirements of conventional lenders."[7] The FHA loan program allows Americans to buy homes with down payments as low as 3.5 percent.

20. The Federal Housing Administration does not itself issue mortgages. "The FHA is not a mortgage lender."[8] It's an insurance agency.

21. Under the FHA program, approved lenders like Chase are permitted to offer mortgages insured by the FHA. If a borrower defaults on an FHA mortgage, the Federal Housing Administration will pay the lender for any losses that it incurs on the mortgage.

22. Because the mortgage is insured, banks and other lenders are more willing to extend loans on favorable terms to borrowers who have poor credit or cannot afford a substantial down payment.

23. The Department of Housing and Urban Development (HUD), which oversees the FHA, issues regulations governing FHA loans. Participating FHA lenders are required to comply with these regulations.

### III. The Truth in Lending Act Requires Disclosure of Prepayment Penalties

24. Congress passed the Truth in Lending Act (TILA) in 1968 to empower consumers to use credit in an informed manner, requiring lenders to fully disclose the cost and terms of their loans. Lenders must provide an initial TILA disclosure when the borrower requests a loan estimate, and a final TILA disclosure at closing.

25. Originally, the Federal Reserve had power to enact implementing regulations under TILA. The main implementing regulation under TILA is called "Regulation Z."

26. The Federal Reserve revised Regulation Z in 1981 to require that lenders disclose, for all loans with a non-zero interest rate, whether the loan obligation included a prepayment penalty.[9]

---

[7] Neil Kokemuller, *What Is the Primary Purpose of FHA?*, SFGATE, https://goo.gl/ZCsP5d.
[8] *Id.*
[9] Regulation Z, 46 FR 20848-01 (Apr. 7, 1981).

**IV.  Banks and Other Lenders Circumvent TILA by Charging Disguised Prepayment Penalties**

27. As federal and state governments made it more difficult for lenders to charge prepayment penalties, lenders began devising schemes to charge the equivalent of a prepayment penalty, without calling it a penalty. Primarily, lenders did so in two ways: (1) lenders required 30 days' notice before a prepayment, forcing borrowers to pay an extra 30 days of interest before they could escape the loan, and (2) lenders required that borrowers make payments only on the first of the month, so a prepayment on any other day would be ineffective to extinguish the loan until the first day of the *following* month.

28. Take, for example, where a borrower decides on June 5 to completely repay her mortgage, giving 30 days' notice to the lender. The earliest she will be allowed to prepay is one month later, on July 5. On that date, she prepays her mortgage in full. The lender, however, says it only accepts payments on the first of the month, treating the July 5 payment as if it were made on August 1. Even though she was willing and able to prepay in full on June 5, the borrower is forced to keep paying interest until August 1, an additional 1.8 months.

29. In effect, lenders had substituted an explicit prepayment penalty—commonly amounting to five months' interest—with a disguised penalty of about two months' interest. The 30-day notice and first-of-the-month requirements are "kind of a backdoor prepay penalty."[10]

30. In 1976, HUD banned FHA lenders from charging any fee explicitly labeled as a prepayment penalty, *i.e.* " 'satisfaction', 'termination', or 'reconveyance' fees."[11] Since that time, lenders—including Chase—have been saying in their TILA disclosures and contracts that their FHA loans did not contain any prepayment penalties. But they collected up to two months of extra interest when a borrower prepaid, due to the 30-day notice requirement and charging for interest until the first day of the month following prepayment ("post-payment interest").

---

[10] TheTruthAboutMortgage, *supra* note 6.
[11] 41 F.R. 218 (Nov. 10, 1976).

5
CLASS ACTION COMPLAINT

31. In 1985, HUD banned FHA lenders from requiring 30 days' notice before prepayment.[12] But the practice of charging post-payment interest continued.

32. In 2009, the Federal Reserve issued commentary to Regulation Z, clarifying that post-payment interest was just a form of prepayment penalty. The Federal Reserve gave "examples of charges considered [prepayment] penalties" under Regulation Z: "One such example is 'interest charges for any period after prepayment in full is made.' "[13] The Federal Reserve noted that post-payment interest had always been a prepayment penalty under Regulation Z (since 1981), and that the Federal Reserve was issuing the new commentary only "for clarity."[14]

33. The Consumer Financial Protection Bureau reiterated this point in 2013: "The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty."[15]

34. After the CFPB explicitly found post-payment interest was a prepayment penalty, HUD implemented a new rule in 2015 to expressly prohibit lenders from charging post-payment interest on FHA loans.[16] But HUD could not make the express prohibition retroactive, so the 7.8 million FHA mortgages issued before 2015 were not covered.[17]

35. The National Association of Realtors estimates that FHA borrowers who prepaid their loans "paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of $587 million."[18]

---

[12] 50 FR 25910-01, 1985 WL 106370 (June 24, 1985). ("With respect to mortgages insured on or after August 2, 1985, the mortgagee shall not require 30 days' advance notice of prepayment, even if the mortgage instrument purports to require such notice.").

[13] 74 FR 43232-01, 2009 WL 2600406 (Aug. 26, 2009).

[14] *See id.* (stating that the commentary to the prepayment penalties section of Regulation Z was "for clarity," but that "no substantive change is intended").

[15] 78 FR 6408, 6445 (Jan. 30, 2013).

[16] 24 C.F.R. § 203.558(a).

[17] Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, LOS ANGELES TIMES (Mar. 30, 2014), https://goo.gl/jgZHgo.

[18] Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, CHICAGO TRIBUNE (Apr. 11, 2004), https://goo.gl/9572G1.

V. **HUD Notice Requirements**

36. Before HUD explicitly banned the practice of charging post-payment interest, HUD had severe restrictions on when post-payment interest could be charged. For FHA loans originated between August 2, 1985 and January 21, 2015, HUD provided that the lender could not charge post-payment interest unless the lender provided an FHA-approved disclosure form whenever a borrower inquires about early payment, requests a payoff estimate, or tenders a prepayment.[19]

37. The Federal Housing Administration provides an approved form for disclosing any possible post-payment interest whenever the borrower is considering an early payoff or refinance. The approved form is excerpted below:[20]

---

[19] 24 C.F.R. § 203.558(b)(2), (b)(3).
[20] HUD Housing Handbook, 4330.1 REV-5 Appendix 8(C) at 1-2.

> MORTGAGEE NOTICE TO MORTGAGOR
>
> (In response to prepayment inquiry, request for payoff or tender of prepayment in full)
>
> Mortgagor: _____   Date: _____
> Address: _____   Loan #: _____
> _____   FHA#: _____
>
>     This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.
>
>     This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.
>
>     The _____(mortgagee name)_____ will:
>
> (a)  [ ]  accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or
>
> (b)  [ ]  only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]
>
> [...]
> NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.
>
> If you have any questions regarding this notice, please contact \_\_\_\_(name and/or department) \_\_\_at\_\_\_(telephone number)\_\_.
>
> _____
> Mortgagee

38.  Chase does not provide the approved form at the time borrowers inquire about prepayment, request a payoff statement, or tender a prepayment. In fact, Chase does not give *any* notice of the possibility of post-payment interest in its payoff statement or elsewhere. As a result, Chase borrowers are not warned, as the FHA form requires, that it is "to [their] advantage to

arrange closings so that the prepayment reaches [Chase] on or before … the first work day of the month."[21]

39. Chase nonetheless continues to charge its borrowers post-payment interest, in violation of HUD regulations and the mortgage notes that incorporate those regulations.

**PLAINTIFF'S EXPERIENCE**

40. Daniel Ogles Jr. applied for an FHA-insured mortgage in 2010, using an FHA "Uniform Residential Loan Application." The initial TILA disclosure on the loan application said the loan did not include any prepayment penalties.

| Summary of your loan | | |
|---|---|---|
| Your initial loan amount is | $ | 245,373.00 |
| Your loan term is | | 30 years |
| Your initial interest rate is | | 5.000 % |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | $ | 1,427.75 per month |
| Can your interest rate rise? | ✔ No | ☐ Yes, it can rise to a maximum of ____%. The first change will be in ____ |
| Even if you make payments on time, can your loan balance rise? | ✔ No | ☐ Yes, it can rise to a maximum of $ ____ |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and any mortgage insurance rise? | ✔ No | ☐ Yes, the first increase can be in ____ and the monthly amount owed can rise to $ ____. The maximum it can ever rise to is $ ____. |
| **Does your loan have a prepayment penalty?** | ✔ No | ☐ Yes, your maximum prepayment penalty is $ ____ |
| Does your loan have a balloon payment? | ✔ No | ☐ Yes, you have a balloon payment of $ ____ due in ____ years. |

41. In 2015, Mr. Ogles decided to refinance his Chase FHA loan with a new lender, Land Home Financial Services, and submitted all the required paperwork in September of that year. The refinance closed on October 6, 2015, but Chase assessed Mr. Ogles interest through to November 1, 2015. For the 25-day period *after* he had fully repaid his loan, Mr. Ogles had to pay $1,861.80 in interest.

42. At no point during the refinance did Chase disclose that there would be a post-payment interest charge if Mr. Ogles did not close by the first of the month. The standard form notice that Chase sent at payoff (the "Payoff Statement") did not even mention post-payment interest, let alone set out the FHA-approved disclosures. (*See* Exhibit A). Had Chase properly

---

[21] *See id*.

1  disclosed the possibility of post-payment interest charges, Mr. Ogles would have avoided paying
2  interest to two lenders by waiting until the 1st of the month to close his refinance loan.
3      43.  Because Chase did not provide Mr. Ogles with the required FHA-approved
4  disclosure, it was not permitted to charge him post-payment interest. But Chase did so anyway,
5  and as a result, Mr. Ogles was harmed in the amount of $1,861.80.

## CLASS ALLEGATIONS

44. Pursuant to Federal Rule of Civil P. 23(b)(3), Plaintiff asserts claims on behalf of the following "Class": All persons from whom Chase collected post-payment interest in connection with any FHA-insured loan issued between August 2, 1985 and January 21, 2015, and secured by real property located in California. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

45. This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a) and (b)(3).

46. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

47. Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiff believes, and on that basis alleges, that the proposed Class is so numerous that joinder of all members would be impracticable.

48. Questions of law and fact common to the putative Class exist that predominate over questions affecting only individual members, including *inter alia*:

   a. Whether Chase systematically charged FHA mortgage borrowers post-payment interest that it was not permitted to charge under FHA regulations;

   b. Whether Chase breached its contract with its FHA mortgage borrowers by

charging post-payment interest, contrary to the contractual terms incorporating HUD requirements;

      c.     Whether Chase breached contractual obligations with the FHA by charging post-payment interest it was not allowed to charge, and whether borrowers may enforce those obligations as third-party beneficiaries; and

      d.     Whether Chase's conduct constitutes an unfair and/or unlawful practice under California's Unfair Competition Law.

49.     Plaintiff is a member of the putative Class. The claims asserted by the Plaintiff in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendant and the relief sought is common.

50.     Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class, as his interests are coincident with, not antagonistic to, the other members of the Class.

51.     Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff's counsel specifically has experience litigating some of the largest and most complex consumer class actions, including numerous consumer class actions in the Northern District of California.

52.     Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims and ensures consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

53.     Certification of the Class is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), and/or (c)(4).

54.     A class action is a superior method for the adjudication of the controversy because it will permit a large number of claims to be resolved in a single forum simultaneously,

efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden on the courts that individual actions would create.

55. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

### First Cause of Action
*Breach of Contract*
(on behalf of Plaintiff and the Class)

56. Plaintiff incorporates by reference all allegations, as if fully set forth herein.

57. Plaintiff and each member of the Class had a contract with Chase, the terms of which are set forth in a promissory note that, pursuant to FHA requirements, contained certain uniform provisions.

58. Among the uniform provisions is one entitled "BORROWER'S PROMISE TO PAY; INTEREST," which provides in pertinent part that "Interest will be charged on unpaid principal, from the date of the loan proceeds by Lender … until the full amount of principal has been paid." (Exhibit B) (Emphasis added.) Chase breached its obligations under this provision by charging Plaintiff and Class members interest after the full amount of principal had been paid.

59. Another uniform provision is entitled "BORROWER'S RIGHT TO PREPAY," and provides in pertinent part that "Lender shall accept prepayment on other days [other than the first of the month] provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary [of HUD]." (Exhibit B.) Chase breached this provision by requiring Plaintiff and Class members to pay interest that was not permitted by regulations of the Secretary of HUD.

60. HUD regulations mandated that for FHA loans originated between August 2, 1985 and January 21, 2015, lenders could not charge post-payment interest unless they used an FHA-approved form to disclose that they "may require payment of interest" to the first day of the month following prepayment. 24 C.F.R. § 203.558(b). This FHA-approved form must be provided upon the borrower's "inquiry, request for payoff figures, or tender of prepayment." *Id*.

61. Chase did not provide an FHA-approved form upon Plaintiff or the Class's inquiries, requests for payoff figures, or tender of prepayments. Chase's standard "Payoff Statement" provided to FHA borrowers does not even *mention* post-payment interest. (*See* Exhibit A.) As such, Chase was not permitted to charge Plaintiff or the Class post-payment interest under the terms of the promissory notes.

62. Plaintiff and the Class did substantially all the significant things their promissory notes required of them, or were excused from doing so. But as a result of Chase's breaches of contract, Plaintiff and the Class were harmed, in that they were required to pay and did in fact pay post-payment interest that they should not have been required to pay.

**Second Cause of Action**
*Third Party Beneficiary*
(on behalf of Plaintiff and the Class)

63. Plaintiff incorporates by reference all allegations, as if fully set forth herein.

64. Whenever an FHA mortgage is issued, per 24 C.F.R. § 203.257, a contract is created between the FHA and the mortgage lender requiring the lender to follow all FHA and HUD regulations with respect to the mortgage. As such, the Federal Housing Administration and Chase have a contract with respect to Plaintiff and the Class's mortgages.

65. Plaintiff and the Class were intended beneficiaries of the FHA's contracts with Chase, with respect to their mortgages.

66. Chase breached its contracts with the FHA by failing to follow all FHA and HUD regulations with respect to Plaintiff's and Class member's mortgages. In particular, Chase charged Plaintiff and Class members post-payment interest that it was not allowed to charge under 24 C.F.R. § 203.558(b).

67. As a result of Chase's breaches of contract, Plaintiff and the Class were harmed, in that they were required to pay and did in fact pay post-payment interest that they should not have been required to pay.

**Third Cause of Action**
*Violation of California's Unfair Competition Law (UCL)*
(on behalf of Plaintiff and the Class)

68. Plaintiff incorporates by reference all allegations, as if fully set forth herein.

69. Chase violated the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, by engaging in unfair and unlawful business acts and practices.

70. Chase's conduct constitutes an unlawful practice, within the meaning of the UCL, because it charges post-payment interest that it is not allowed to charge under 24 C.F.R. § 203.558(b). That provision prohibits mortgage lenders like Chase from charging post-payment interest unless they first disclose, in "a form approved by the Commissioner," the possibility of post-payment interest at the time the borrower is considering early payoff or refinancing (*i.e.*, upon a borrower's "inquiry, request for payoff figures, or tender of prepayment"). As alleged above, Chase does not disclose the possibility of post-payment interest to its borrowers, but still charges them post-payment interest.

71. Defendant's conduct also constitutes an unfair practice, within the meaning of the UCL, because its conduct was unscrupulous and causes consumers substantial harm. This conduct includes charging customers for post-payment interest if the principal is paid off on any day other than the first of the month, and doing so without first informing customers of that possibility. Customers were harmed by being forced to pay post-payment interest. The harms stemming from Chase's conduct outweigh any utility of the conduct. A study found that charging of prepayment penalties, such as post-payment interest, did not reduce interest rates for borrowers, and often resulted in *higher* interest rates for borrowers because the prepayment penalties made it harder to refinance "into a better-priced loan."[22] The study concluded, "The fact that borrowers receive no interest savings makes prepayment penalties unfair and anticompetitive."[23]

72. The conduct described above is additionally unfair because it violates the policy and spirit of TILA and HUD regulations. TILA, enhanced by Regulation Z, requires disclosure to the borrower of all true costs of the mortgage. On its TILA disclosure, Chase obscured whether there are prepayment penalties by stating that the loan had none, even though post-payment interest constitutes a prepayment penalty. Chase additionally violated the policy and spirit of HUD regulations on prepayment penalties, specifically 24 C.F.R. § 203.552(a)(12)(iii), which

---

[22] Keith S. Ernst, *Borrowers Gain No Interest Rate Benefits from Prepayment Penalties on Subprime Mortgages*, CENTER FOR RESPONSIBLE LENDING (Jan. 2005), https://goo.gl/mZuQba.
[23] *Id.*

14
CLASS ACTION COMPLAINT

requires that lenders only charge "reasonable" fees, which may not include: "Satisfaction, termination, or reconveyance fees when a mortgage is paid in full." Post-payment interest charges are not "reasonable" because once the principal is paid in full, there is no remaining balance on which to assess an interest charge. In addition, post-payment interest charges are equivalent to or comparable to early "termination" fees.

73. Plaintiff and the Class were injured and lost money or property as a result of Defendant's unfair and unlawful acts and practices. Plaintiff seeks injunctive relief to prohibit Chase from charging post-payment interest on FHA loans originated between August 2, 1985 and January 21, 2015, as well as restitution, including of amounts of post-payment interest that were unfairly and unlawfully charged to Plaintiff and Class members.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel Ogles Jr., on behalf of himself and the Class, seeks the following relief:

A. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing Gibbs Law Group LLP as Class Counsel, and finding that Plaintiff is a proper representative of the Class;

B. Declaratory relief, declaring Defendant's actions unlawful;

C. Injunctive relief, including an order prohibiting Defendant from charging post-payment interest;

D. Compensatory or other damages, restitution, and disgorgement, attorneys' fees, costs, and such other relief as is just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: November 15, 2017          /s/ Eric H. Gibbs

**GIBBS LAW GROUP LLP**
Eric H. Gibbs (SBN 178658)
Michael L. Schrag (SBN 185832)
Geoffrey A. Munroe (SBN 228590)
Aaron Blumenthal (SBN 310605)
505 14th Street, Ste. 1110

15
CLASS ACTION COMPLAINT

Oakland, CA 94612
Telephone: 510-350-9700
Facsimile: 510-350-9701
*ehg@classlawgroup.com*
*mls@classlawgroup.com*
*gam@classlawgroup.com*
*ab@classlawgroup.com*

*Attorneys for Plaintiff*